# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PALMA SILVAGGIO, | ) |
| Plaintiff, | ) |
| v. | ) 2:12cv1605 |
| | ) **Electronic Filing** |
| **CEMENT MASONS LOCAL 526** | ) |
| **PENSION FUND**, a/k/a CEMENT | ) |
| MASONS LOCAL 526 COMBINED | ) |
| FUNDS, INC. , | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

March 2, 2015

## I. INTRODUCTION

Plaintiff, Palma Silvaggio ("Palma" or "Plaintiff"), filed this action against Defendant, Cement Masons Local 526 Pension Fund (the "Fund"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to recover the benefit of the 100% Joint and Survivor Annuity under Local 526's Pension Plan (the "Plan") pursuant to 29 U.S.C. § 1132. The Fund has filed a Motion for Summary Judgment, Plaintiff has responded and the matter is now before the Court.

## II. STATEMENT OF THE CASE

Cement Masons Local 526 ("Local 526") is a local union within the Operative Plasters and Cement Masons International Association and maintains a primary office in Pittsburgh, Pennsylvania. Defendant's Concise Statement of Undisputed Material Facts ("Defendant's CSUMF") ¶ 6. Local 526 is organized and exists as a collective bargaining agent for cement masons who are members and work in the Pittsburgh and tri-state area. Defendant's CSUMF ¶ 7. The Fund, by and through its duly authorized Board of Trustees and Fund Administrator, acted

as the Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A) of the Fund for employees and employee members of Cement Masons Local 526. Defendant's CSUMF ¶ 8; Complaint ¶ 12.

Domenic Silvaggio ("Domenic"), Palma's husband, was a cement mason and member of Local 526. Defendant's CSUMF ¶ 3. Domenic was a participant in Local 526's Pension Plan, and had enrolled Palma as a dependent for all pension and benefit purposes. Defendant's CSUMF ¶¶ 4 & 5. In or around December, 1991, Domenic decided to retire. Defendant's CSUMF ¶¶ 11 & 12. Prior to filing his election to retire, Domenic was provided with a letter dated December 19, 1991, along with an Application for Pension Benefits from the Cement Masons Local 526 (the "Application"), which provided his benefit payment for each of the offered retirement selections: (1) the 60-Month Certain Annuity provided $1,497.77/month for 60 months with the beneficiary receiving any of the 60 payments not paid at the time of the payee's death; (2) the 50% Joint and Survivor Annuity (the "50% Option") provided $1,315.04/month for life and upon the death of the payee, the spouse would receive $657.52/month for life; and (3) the 100% Joint and Survivor Annuity (the "100% Option") provided $1,180.24/month for life and upon the death of the payee, the spouse would also receive $1,180.24/month for life. Defendant's CSUMF ¶¶ 12, 13 & 14; Defendant's Exhibit 2.

Prior to completing his application, Domenic sought the advice of John La Scola ("La Scola") who was the business manager/ financial secretary for Local 526, and was a trustee of the Fund. Complaint ¶¶ 20 & 20[1]; Defendant's Exhibit 10, pp. 20-22. La Scola contends that he advised Domenic to elect the 100% Option, and it was his understanding that Domenic wanted the 100% Option for Palma. Defendant's Exhibit 10, pp. 22-23.

---

[1] Plaintiff's complaint has two (2) Paragraph 20s.

On or about December 24, 1991, Domenic completed and executed the Application for benefits[2]. Defendant's Exhibit 1. The Application, however, contains a check-mark indicating the selection of the 50% Option[3]. Defendant's CSUMF ¶ 15; Defendant's Exhibit 1. Domenic's December benefit check from the Fund, dated January 1, 1992, was accompanied by a letter informing him that he was to receive monthly checks as follows:

| | |
|---|---|
| Gross Amount | $1315.04 |
| Withholding tax | 131.50 |
| Net Amount | 1183.54 |

*See* Defendant's Exhibit 3. The check, which was signed by La Scola, had the same information on the face of the check. *Id.* The gross amount of the check corresponded to the amount Domenic was to receive under the 50% Option as set forth in the December 19, 1991 letter. Neither Domenic, Palma nor La Scola questioned the amount of the benefit check. Domenic received his monthly pension benefit checks, without question or complaint, until his death on July 31, 2011. Defendant's CSUMF ¶ 17. At the time of his death, Domenic was collecting $1,928.85 per month in pension benefits. *See* Defendant's Exhibit 5. Under the 50% Option, Palma was to receive $964.43 per month. *Id.*

When Palma received a reduced benefit check after Domenic's death, she submitted a letter of appeal to the Board of Trustees of Local 526, dated September 13, 2011, alleging that it

---

[2] Though Domenic and Palma completed the election for the Single Life 60-Month Certain Annuity, their signatures were crossed-out, and the letter was not notarized as required to effect the election.

[3] Plaintiff denies that Domenic made such election, and contends that it has "already been proven" that Domenic did not mark the Application for the 50% option. *See* Plaintiff's Reply to Defendant's Concise Statement of Undisputed Facts ("Plaintiff's RCSUF") ¶ 15. Plaintiff, however, failed to support such denial and contention by citation to the record as required by Local Rule 56.C.1.b. Nor was this Court able to find any such support in the exhibit attached to Plaintiff's responding documents.

3

was Domenic's intent that she receive no reduction of benefits after his death. *See* Defendant's Exhibit 4. By letter dated January 18, 2012, Palma was notified that the Pension Fund Trustees had denied her appeal, and informed her that she could appeal the denial by filing suit in the United States District Court for the Western District of Pennsylvania. *See* Defendant's Exhibit 6. By letter dated January 23, 2012, counsel for Palma requested a full hearing before the Board of Trustees. *See* Defendant's Exhibit 7. Following a full hearing before the Board in April, 2012, Palma's appeal was again denied. Defendant's CSUMF ¶ 21. The Board of Trustees indicated that the decision was based upon the following factors:

(1) The pension application of Mr. Silvaggio;
(2) The pension letter dated 12/19/91; and
(3) Spousal consent is only required for a benefit option below the 50% Joint & Survivor Option.

*See* Defendant's Exhibit 8. An appeal to this Court followed.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts

4

must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

IV. **DISCUSSION**

Palma contends that the Fund denied her benefits by reducing her survivor benefit to 50% of Domenic's benefit after his death.  The Fund argues that it is entitled to summary judgment because, notwithstanding the 50% Option being checked on the Pension Application, the Plan documents require the Fund to select the 50% Option absent an election by the participant. Moreover, Domenic accepted the higher benefit paid under the 50% Option for almost twenty (20) years without complaint.

A denial of benefits challenged under § 1132(a) (1) (B) is generally reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, the plan grants such discretionary authority, "[t]rust principles make a deferential standard of review appropriate." *Id.* at 111. A denial of benefits, then, is reviewed under an arbitrary and capricious standard. *Fleisher v. Std. Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Orvosh v. Program of Group Ins. for Salaried Emps. of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)).

In the instant matter, neither party advocates a standard of review for Palma's appeal of the Board of Trustees' denial of her request to be paid benefits under the 100% Option. Moreover, this Court is unable to ascertain whether the plan document gives the Administrator authority to determine eligibility for benefits or to construe the terms of the plan because the plan document is not part of the record[4]. Accordingly, this Court will employ a *de novo* standard in its review.

Plaintiff argues that summary judgment must be denied because: (1) she has been proven that neither she nor Domenic made the check mark selecting the 50% Option, and that Domenic, in fact, elected the 100% Option; and (2) the Fund breached its fiduciary duty by failing to either question Domenic's Application, or confirm that the correct option was selected. Plaintiff, however, cannot create a material issue of fact with a *post hoc* averment of Domenic's intent. The Plaintiff's argument that the Fund breached its fiduciary duty to Domenic also fails.

---

[4] The Defendant has included part of Section VII of the plan document in effect at the time of Domenic's election, titled "FORM OF PAYMENT FOR RETIREMENT BENEFITS", as Exhibit 11 of its Appendix.

Regarding the check mark selecting the 50% Option on the Application, Plaintiff argues that Michelle Dresbold, a handwriting expert, testified at the appeal hearing and opined that the mark selecting the 50% Option was not made by either Domenic or Palma. As further evidence, Plaintiff contends that a report prepared by forensic handwriting expert, David Liebman, also concluded that the mark was not made by either of the Silvaggios. Neither Dresbold's testimony[5] nor Liebman's report, however, are included in this record. Because such assertions are unsupported in the factual record, Plaintiff cannot rely upon them to create a material issue of fact.

Moreover, whether the Silvaggios made the mark selecting the 50% Option or an employee of the Fund processing the Application made the mark, the result is the same. Under the Plan documents, a participant's failure to make an election regarding the form of payment of his or her benefits creates a default to the 50% Option. Section VII of the plan document in effect at the time Domenic submitted the Application states in relevant part:

> 7.02   <u>Married Participants</u>:   If a Participant has a Spouse on his Annuity Date, his Retirement Benefit, shall be paid as follows:
>
> (a)   The **normal form of payment** shall be the Joint and 50% Survivor Annuity.
>
> (b)   The **optional forms of payment** shall be the Joint and 100% Survivor Annuity and the Single Life 60-Month Certain Annuity.
>
> (c)   A Married Participant may waive the Joint and 50% Survivor Annuity normal form of payment and elect the Joint and 100% Survivor Annuity or the Singe Life 60-Month certain Annuity optional form of payment, and if electing the Single Life 60-Month certain Annuity,

---

[5]   The only portion of the transcript of the appeal hearing included in the record is found at Exhibit10 of Defendant's Appendix and includes on the La Scola's testimony at pages 20 through 28.

> concurrently designate a beneficiary under that form of payment, by filing a written waiver and election with the Trustees at any time during the 90 day period ending on his Annuity Starting Date. . . .
>
> (d) . . . (3) The Participant's revocation of his waiver of the Joint and 50% Survivor Annuity shall not require spousal consent.
>
> (4) [The Participant's] election of form of payment shall be irrevocable on his Annuity Starting Date. Thereafter, . . . [the Participant] may not elect, or revoke an election of, a form of payment.

*See* Defendant's Exhibit 11(emphasis added). Accordingly, in order to waive the 50% Option, an objective manifestation of such intent, *i. e.* selecting either the 100% Option or the 60-Month Certain Annuity, is required by the participant.

Plaintiff argues that Domenic did in fact elect the 100% Option and directs the Court to La Scola's testimony at the appeal hearing. La Scola's testimony, however, only indicates that he believed Domenic intended to select the 100% Option, but La Scola had no firsthand knowledge that Domenic in fact made the selection.

Under ERISA, a pension plan administrator is "obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (alteration in original, internal quotation omitted). "[B]y giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent." *Id.*at 301; *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA's statutory scheme "is built around reliance on the face of written plan documents"). In analyzing a claim for benefits 29 U.S.C. § 1132 (a)(1)(B), then, a court may not inquire into a party's intent in executing the plan documents. *Canestri v. NYSA-ILA Pension Trust Fund & Plan*, 2010 U.S. Dist. LEXIS 112668 at *20 (D.N.J. Oct. 22, 2010). Such "simple

administration" avoids liability and ensures that "beneficiaries get what's coming quickly, without folderol essential under less certain rules." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. at 876 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990)).

The Court finds that Domenic and Palma were paid in accordance with the documents and instruments governing the plan. Domenic received his first benefit check from the Fund in early January, 1992, accompanied by a letter informing him that he was to receive monthly checks as follows:

|  |  |
| --- | --- |
| Gross Amount | $1315.04 |
| Withholding tax | 131.50 |
| Net Amount | 1183.54 |

*See* Defendant's Exhibit 3. The check, which was signed by La Scola, had the same information on the face of the check. *Id.* The gross amount of the check corresponded to the amount Domenic was to receive under the 50% Option as set forth in the December 19, 1991 letter. Neither Domenic nor Palma questioned why they were receiving an amount greater than that set forth under the 100% Option. The December 19th letter clearly and unambiguously provided Domenic's benefit payment for each of the retirement selections offered. Moreover, Domenic received his monthly pension benefit checks, without question or complaint for almost twenty (20) years.

Plaintiff also argues that the Fund breached its fiduciary duty by failing to question, or confirm, whether the correct option was selected. To establish a breach of fiduciary duty premised upon a misrepresentation or omission, a plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied

on the misrepresentation or inadequate disclosure. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009). Plaintiff has failed to direct this Court to any evidence of record that any of the above elements, except the first element, have been met.

ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *See Canestri v. NYSA-ILA Pension Trust Fund & Plan*, 2010 U.S. Dist. LEXIS 112668, 21-22 (D.N.J. Oct. 22, 2010) (quoting 29 U.S.C. § 1104(a)(1)(B)). A fiduciary has "a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 461 (3d Cir. 2003). The duty to inform also "entails . . . a negative duty not to misinform." *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).

There are no contentions here that the Fund failed to inform Domenic of the forms of payment that were available to him. Nor is it argued that Domenic acted on a material misrepresentation that affected his completion of the Application. Plaintiff instead contends that the Fund had an affirmative duty to confirm that the selections Domenic made on the Application were in fact the selections Domenic intended. Plaintiff fails, however, to direct this Court to any authority that a fiduciary has such an affirmative duty under ERISA. Moreover, the Fund has a fiduciary duty to act in accordance with the documents and instruments governing the plan and to act in the best interest of the participants and beneficiaries. The Fund, in this instance acted in accordance with the express language of the plan documents in effect at the time of Domenic's election. To allow Plaintiff to alter the selected annuity option twenty (20)

years after payments began would not be in the best interests of either the Fund or its members. Accordingly, the Court finds that the Fund did not breach its fiduciary duty to Plaintiff.

V. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment shall be granted. An appropriate Order follows.

s/DAVID STEWART CERCONE  
David Stewart Cercone  
United States District Judge

cc: Terrance R. Henne, Esquire  
Stephen J. O'Brien, Esquire  
Jaime L. Kyle, Esquire

(*Via CM/ECF Electronic Mail*)